[No. 38909. Department One. March 16, 1967.]

ROBERT H. BOND, *Respondent,* v. THE STATE OF WASHINGTON, *Appellant.**

*Reported in 425 P.2d 10.

The *Attorney General, Lembhard G. Howell* and *Charles F. Murphy, Assistants,* for appellant.

*Corbett, Siderius & Lonergan* and *Patrick W. Crowley,* for respondent.

HILL, J.—Robert H. Bond was discharged from his position as safety inspector for the Department of Labor and Industries on February 28, 1957.

Almost 3 years later, he commenced a mandamus action to compel his restoration to the position he had occupied, contending that he was entitled to a veteran's preference in public employment (RCW 73.16.010) and had been discharged without cause and replaced by a nonveteran.

The action was dismissed in the superior court on the ground that the 2-year statute of limitations applied.

On appeal (*State ex rel. Bond v. State,* 59 Wn.2d 493, 368 P.2d 676 (1962)), we held that the 3-year statute of limitations was applicable to the mandamus action for reinstatement and such action was not barred by the 2-year statute of limitations.

The cause was remanded for a consideration of the affirmative defense of laches; and if the action was not barred by laches, to determine the relief to which Mr. Bond was entitled. On remand, the superior court granted a summary judgment, directing that Mr. Bond be reinstated as safety inspector and allowed recovery of damages in the sum of $16,044.58, together with accrued vacation time, sick leave, and other incidental benefits. The state appealed—the only issue being whether a summary judgment should have been granted.

We held in *State ex rel. Bond v. State,* 62 Wn.2d 487, 383 P.2d 288 (1963), that there was a genuine issue as to laches

and, therefore, the state was entitled to a trial on the merits. We again remanded the case to the superior court for trial.

After a trial on the merits, Mr. Bond was awarded a judgment against the state in the sum of $20,169.92 on March 23, 1964.

He sought payment through the tort claims account. This was denied, the state taking the position that the action did not "sound" in tort and that the judgment could not be paid without a specific appropriation.

Mr. Bond instituted a mandamus action on or about the 15th day of May, 1964, to compel the certification of the judgment to the Central Budget Agency for payment from the tort claims account. Mr. Bond did not pursue this action, but went directly to the state legislature for an appropriation to pay the judgment.

. The legislature did (Laws of 1965, Ex. Ses., ch. 169, p. 2658) appropriate from the "Accident Fund Appropriation for judgments" the sum of $20,735.24 to pay the "judgment and costs."

The judgment was paid July 9, 1965, and the present action was instituted to recover interest at 6 per cent on the judgment ($20,169.92) from the date of its entry, March 23, 1964, to the date of its payment, July 9, 1965. The superior court, relying on our statute RCW 4.56.110,[1] entered judgment for $1,478, and from that judgment the state has appealed, insisting that it was not liable for interest on that judgment.

■ However, the generally recognized rule, even in the face of such a statutory provision, is that a state is not liable for interest in any case except where expressly, or by a reasonable construction of a contract or statute, it has placed itself in a position of liability.[2] This rule has been followed in Washington. *Pape v. Armstrong,* 47 Wn.2d 480,

---

[1]After special provisions for interest on written contracts relative to interest, the statute reads: "all other judgments shall bear interest at the rate of six percent per annum from date of entry thereof."

[2]See Annotation 24 A.L.R.2d 928 at 974 (1952).

287 P.2d 1018 (1955); *Columbia Steel Co. v. State,* 34 Wn.2d 700, 209 P.2d 482 (1949); *Horton v. Department of Labor & Indus.,* 199 Wash. 212, 90 P.2d 1009 (1939); *Spier v. Department of Labor & Indus.,* 176 Wash. 374, 29 P.2d 679 (1934).

To avoid this well established rule, counsel for Mr. Bond rely upon the tort claims act and its waiver of governmental immunity (RCW 4.92.090).[3]

The state takes the broad position that Mr. Bond's claim does not sound in tort and, hence, the tort claims act has no application; and that if it is a tort claim, the state has not paid and will pay no interest on judgments secured under the tort claims act, because there is nothing in that act to indicate that the state intended to assume any liability for interest. The state relies on *Columbia Steel Co. v. State, supra,* where—in speaking of a right given to sue the state—the court said;

> We are of the opinion that a sovereign state cannot be sued without its consent, particularly in connection with the exercise of its governmental functions. The right to sue the state, when accorded by statute, extends no farther than to grant the plaintiff the right to bring his action and, if the evidence introduced before the trial court is sufficient to establish the state's liability, to recover against the state a judgment for the amount due, not including interest unless the payment of interest by the state is also authorized by statute. (p. 712)

We agree with the state that it is not liable for interest in this case, on the basis of our cases heretofore cited. We would make it clear, however, that we are not passing on the effect of the tort claims act, as we do not believe that it has any bearing on the issue now before us.

---

[3]"The state of Washington, whether acting in its governmental or proprietary capacity, shall be liable for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation."

The clause "to the same extent as if it were a private person or corporation" would seem to raise a question, suggested only in the oral argument, as to what extent any "private person or corporation" could be liable for "tortious conduct" in discharging an employee?

The right of Mr. Bond to maintain his action was in no way dependent upon the tort claims act. The right of action under the veterans' preference act had been recognized in earlier cases cited in the first *Bond* case, *supra*. Nor was the judgment paid from the tort claims account.

It has never been determined that the claim in question is a tort claim. The state has, at all times, contended that the claim does not "sound" in tort. Whether it is a tort within the purview of the tort claims act is an issue that has never been passed upon at the trial court level, and it is not properly before this court. Mr. Bond was in a position to have the matter determined when he brought his mandamus action to compel payment of his judgment from the tort claims account. However, as indicated, he abandoned that action to get a legislative appropriation for the payment of his judgment. The legislature directed its payment from the "Accident Fund Appropriation for judgments."[4] This is a fund administered through the Department of Labor and Industries by which Mr. Bond had been employed and has no relationship to the tort claims account.

It has been specifically held that judgments payable out of the accident fund appropriation do not bear interest. *Horton v. Department of Labor & Indus., supra; Spier v. Department of Labor & Indus., supra.*

We are satisfied that the state of Washington has not expressly, or by reasonable construction, placed itself in a position of liability for interest in this case, and we adhere to the general rule of nonliability on the part of the state. The judgment of the trial court is reversed, and the entry of a judgment of dismissal is directed.

FINLEY, C. J., ROSELLINI and HALE, JJ., and LANGENBACH, J. Pro Tem., concur.

---

[4] Laws of 1965, Ex. Ses., ch. 169, p. 2658.