22CA1723 Peo v Hagos 11-27-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1723
City and County of Denver District Court No. 00CR3603
Honorable Christopher J. Baumann, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Abraham Hagos,

Defendant-Appellant.

ORDERS AFFIRMED

Division I
Opinion by JUDGE J. JONES
Lipinsky and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 27, 2024

Philip J. Weiser, Attorney General, Patrick A. Withers, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Nicole M. Mooney, Alternate Defense Counsel, Golden, Colorado, for Defendant-
Appellant

¶ 1     Defendant, Abraham Hagos, appeals the postconviction court's orders denying his pro se Crim. P. 35(c) motion for postconviction relief (as supplemented by counsel), his Crim. P. 35(c) motion for a proportionality review, and his Crim. P. 35(a) motion to correct an illegal sentence.  We affirm the orders.[1]

## I.     Background

¶ 2     In 2002, a jury convicted Hagos of first degree kidnapping, first degree burglary, felony menacing, and conspiracy to commit second degree kidnapping, first degree burglary, and felony menacing.  The trial court sentenced him to life in the custody of the Department of Corrections without the possibility of parole.

¶ 3     Hagos appealed his conviction, and a division of this court affirmed.  *See People v. Hagos*, (Colo. App. No. 03CA0315, Dec. 8, 2005) (not published pursuant to C.A.R. 35(f)) (*Hagos I*).

---

[1] Hagos's counsel improperly formatted citations to the record in the opening brief by removing spaces, artificially lowering the word count.  This violated C.A.R. 28(e) and the Court of Appeals Policy on Citation to the Record, https://perma.cc/NU53-ZBFQ.  We explicitly disapprove of that practice and expect that it won't happen again.

¶ 4    In 2006, Hagos filed a pro se Crim. P. 35(c) motion for postconviction relief. He asserted, among other things, that the prosecution presented insufficient evidence to sustain his first degree kidnapping conviction and that inconsistencies between the first degree kidnapping and felony menacing verdicts resulted in an infirm conviction. The postconviction court summarily denied the motion, and Hagos appealed through counsel. Postconviction appellate counsel raised four arguments on appeal, none of which challenged the evidence's sufficiency or the first degree kidnapping and felony menacing verdicts' consistency. A division of this court affirmed. *See People v. Hagos*, (Colo. App. No. 07CA0902, May 13, 2010) (not published pursuant to C.A.R. 35(f)), *aff'd*, 2012 CO 63.

¶ 5    In 2019, Hagos filed another pro se Crim. P. 35(c) motion for postconviction relief. Through new counsel, he filed a supplemental Crim. P. 35(c) motion two years later, asserting that postconviction appellate counsel provided ineffective assistance by failing to argue, in the appeal of the postconviction court's denial of Hagos's first Crim. P. 35(c) motion, that the prosecution presented insufficient evidence to sustain Hagos's first degree kidnapping conviction and

that inconsistencies between the first degree kidnapping and felony menacing verdicts and between the first degree kidnapping and conspiracy to commit second degree kidnapping verdicts resulted in an infirm conviction for first degree kidnapping. Counsel also moved for (1) an abbreviated and extended proportionality review under Crim. P. 35(c), asserting that Hagos's life without parole sentence is grossly disproportionate to his first degree kidnapping conviction; and (2) correction of an illegal sentence under Crim. P. 35(a), asserting that Colorado law doesn't authorize Hagos's sentence.

¶ 6 In separate orders, the postconviction court summarily denied the supplemental Crim. P. 35(c) motion regarding postconviction appellate counsel, the Crim. P. 35(c) motion for a proportionality review, and the Crim. P. 35(a) motion to correct an illegal sentence. Hagos appeals all three orders.

II. Standard of Review and Applicable Law

¶ 7 We review de novo a postconviction court's summary denial of a Crim. P. 35(c) motion. *People v. Higgins*, 2017 COA 57, ¶ 11. A court may deny a Crim. P. 35(c) motion without a hearing when (1)

3

the motion, files, and record clearly establish that the defendant isn't entitled to relief; (2) the allegations, even if true, don't provide a basis for relief; or (3) the claims are bare and conclusory in nature and lack supporting factual allegations. *Id.* at ¶ 4; *see also* Crim. P. 35(c)(3)(IV).

¶ 8 We also review de novo the postconviction court's summary denial of a Crim. P. 35(a) motion to correct an illegal sentence. *See People v. Bassford*, 2014 COA 15, ¶ 20. "A sentence that is inconsistent with the statutory sentencing scheme outlined by the General Assembly is illegal." *People v. Hard*, 2014 COA 132, ¶ 46.

### III.    Postconviction Appellate Counsel

¶ 9 Hagos first contends that the postconviction court erred by summarily denying his supplemental Crim. P. 35(c) motion regarding postconviction appellate counsel. We disagree.

### A.    Applicable Law

¶ 10 A defendant has a limited statutory right to effective assistance of postconviction counsel. *Silva v. People*, 156 P.3d 1164, 1168-69 (Colo. 2007). To succeed on an ineffective assistance of counsel claim concerning trial, appellate, or postconviction counsel, the defendant must show by a

preponderance of the evidence that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Dunlap v. People*, 173 P.3d 1054, 1061-62 (Colo. 2007); *Silva*, 156 P.3d at 1169. If the defendant doesn't satisfy both prongs, the claim fails. *Strickland*, 466 U.S. at 697.

## B. Analysis

¶ 11 In his motion, Hagos asserted that postconviction appellate counsel provided ineffective assistance by failing to argue, in the appeal of the denial of Hagos's first Crim. P. 35(c) motion, that the prosecution presented insufficient evidence to sustain his first degree kidnapping conviction, and that inconsistencies between the first degree kidnapping and felony menacing verdicts and between the first degree kidnapping and conspiracy to commit second degree kidnapping verdicts resulted in an infirm conviction for first degree kidnapping.

¶ 12 The postconviction court ruled that these claims are procedurally barred under Crim. P. 35(c)(3)(VII), which provides that "[t]he court shall deny any claim that could have been presented in

an appeal previously brought or postconviction proceeding previously brought."

¶ 13     Hagos asserts that the court's ruling is "nonsensical" because "[i]t is impossible to assert ineffective postconviction counsel claims until the conclusion of the postconviction proceedings."  *See People v. Clouse*, 74 P.3d 336, 341 (Colo. App. 2002).  But even if he were correct on the issue of successiveness as it applies to postconviction appellate counsel, that would only get him so far.  He fails to grasp that, had postconviction appellate counsel raised these claims, Crim. P. 35(c)(3)(VII) would have barred them as successive because Hagos could have raised them on direct appeal.  *See People v. Vondra*, 240 P.3d 493, 494 (Colo. App. 2010) (under Crim. P. 35(c)(3)(VII), a court must deny any claim that could have been raised in a prior appeal).

¶ 14     Hagos's argument might carry more weight if he had claimed that postconviction appellate counsel failed to argue that *trial counsel* — or even appellate counsel on direct appeal — provided ineffective assistance by not challenging the evidence's sufficiency and the verdicts' consistency.  *See* Crim. P. 35(c)(3)(VIII)

("Notwithstanding [Crim. P. 35(c)(3)(VII)], the court shall not deny a postconviction claim of ineffective assistance of trial counsel on the ground that all or part of the claim could have been raised on direct appeal."). But Hagos didn't make such a claim. He merely claimed that postconviction appellate counsel failed to challenge the evidence's sufficiency and the verdicts' consistency in the appeal of the denial of his first Crim. P. 35(c) motion. As noted, had postconviction appellate counsel raised such challenges, this court would have found them barred under Crim. P. 35(c)(3)(VII). Therefore, postconviction appellate counsel couldn't have provided ineffective assistance by failing to raise them.

¶ 15    We reject Hagos's argument that, because Crim. P. 35(c)(3)(VII)'s procedural bar didn't take effect until two months after he had directly appealed his conviction, this allowed him to wait until a postconviction proceeding to assert his claims. As the People point out, the Colorado Supreme Court adopted the relevant amendments to Crim. P. 35 four months before Hagos's counsel filed the opening brief on direct appeal. *See* Rule Change 2004(2), Colorado Rules of Criminal Procedure (Amended and Adopted by

the Court En Banc, Jan. 29, 2004), https://perma.cc/R9YQ-CT55. Counsel thus could reasonably have believed when filing the opening brief on direct appeal that Crim. P. 35, as amended, would preclude Hagos from waiting until a postconviction proceeding to raise claims that he could have raised in his direct appeal. *See People v. Walton,* 167 P.3d 163, 167 (Colo. App. 2007) (concluding that Crim. P. 35(c)(3)(VII) barred the defendant's postconviction claim because he didn't raise it on direct appeal, even though the opening brief in his direct appeal had been filed more than one year before Crim. P. 35's changes took effect). And postconviction appellate counsel could therefore have reasonably decided that any claim of ineffective assistance on this basis would go nowhere.

¶ 16 In any event, even if it was unclear whether Crim. P. 35(c)(3)(VII) would have barred Hagos's claims, Hagos can't demonstrate that postconviction appellate counsel's failure to raise them amounted to ineffective assistance because the claims are meritless.

¶ 17 In support of his insufficient evidence claim, Hagos argues that the prosecution presented insufficient evidence to prove that

he forcibly seized and carried the victim and the victim suffered bodily injury. *See* § 18-3-301(1)(a), C.R.S. 2024 (a person commits first degree kidnapping by "[f]orcibly seiz[ing] and carr[ying] any person from one place to another" with the requisite intent); § 18-3-301(2), C.R.S. 2024 ("Whoever commits first degree kidnapping is guilty of a class 1 felony if the person kidnapped shall have suffered bodily injury.").

¶ 18    Reviewing this issue de novo, *see People v. Harrison*, 2020 CO 57, ¶ 31, we conclude that substantial evidence in the record supports Hagos's first degree kidnapping conviction. The prosecution presented sufficient evidence to prove that Hagos, either personally or as a complicitor, forcibly seized and carried the victim from one place to another.[2]  That a division of this court concluded that the trial court erroneously instructed the jury that it could find Hagos guilty of first degree kidnapping if he "forcibly, *or otherwise,* seized and carried any person from one place to another," doesn't render the evidence of force insufficient, as Hagos

---

[2] The trial court instructed the jury that it could find Hagos guilty of first degree kidnapping as a complicitor.

suggests.  Rather, the division reasoned that the erroneous jury

instruction wasn't plain error *because* the evidence of force was

overwhelming:

> [T]he record contains overwhelming,
> undisputed evidence that B.L. was seized and
> carried from his apartment by force.  He was
> beaten, hit with a gun, threatened with a gun,
> handcuffed, and ordered to walk to a car,
> which took him away from his apartment at
> gunpoint.  It is also undisputed that the goal of
> these acts was to obtain B.L.'s cooperation in
> locating his brother, R.L.  Further, the record
> shows that this entire scenario was planned
> and directed by [Hagos].  Testimony from a
> number of witnesses shows that [Hagos]
> organized the raid on B.L.'s apartment and
> offered others a reward to help him locate his
> missing money and drugs. . . .
>
> Accordingly, because the record contains
> overwhelming and undisputed evidence of
> [Hagos]'s participation in the forcible removal
> of B.L. from his apartment, we conclude the
> addition of the language "or otherwise" did not
> so undermine the fundamental fairness of the
> trial as to cast serious doubt on the reliability
> of the conviction.

*Hagos I*, slip op. at ¶¶ 17-18.

¶ 19    The prosecution also presented sufficient evidence to prove

that the victim suffered bodily injury as a result of the kidnapping.

The jury heard testimony that Hagos and his friend took a gun and

leather whip into a bathroom, where they hit and whipped the victim. Afterwards, the victim looked "beat up" and "bruised," and blood covered "his eyes, nose, and . . . head."

¶ 20     Hagos asks us to disregard this evidence because "such testimony came from witnesses who were either co-defendants or uncharged participants testifying for immunity, leniency, and self-preservation" and the record contains exculpatory evidence. But "the determination of the credibility of witnesses is solely within the province of the jury[,] . . . [and] the trial court may not serve as a thirteenth juror and determine what specific weight should be accorded to various pieces of evidence or by resolving conflicts in the evidence." *People v. Sprouse*, 983 P.2d 771, 778 (Colo. 1999); *see Harrison*, ¶ 33 (in reviewing a sufficiency of the evidence challenge, we may not consider whether we might have reached a different conclusion than that of the jury or invade the jury's province by second-guessing any findings that are supported by the evidence).

¶ 21     Because the prosecution presented sufficient evidence to sustain his first degree kidnapping conviction, Hagos can't prove

11

that counsel provided ineffective assistance by not challenging the sufficiency of the evidence in the appeal of the denial of his first postconviction motion.

¶ 22     Hagos raises two arguments in support of his inconsistent verdicts claim: (1) the first degree kidnapping and felony menacing verdicts are inconsistent; and (2) the first degree kidnapping and conspiracy to commit second degree kidnapping verdicts are inconsistent.

¶ 23     We review de novo whether verdicts are inconsistent. *People v. Delgado*, 2019 CO 82, ¶ 13.  Although it isn't necessary for a guilty verdict and a not guilty verdict to be consistent, two legally and logically inconsistent guilty verdicts can't stand.  *Id.* at ¶¶ 14, 20. Verdicts are legally and logically inconsistent where an element of one offense negates a necessary element of the other.  *Id.* at ¶ 20. In making this determination, we review the evidence presented at trial and ask "whether the jury had to rely on identical evidence in producing two apparently inconsistent conclusions."  *People v. Frye*, 872 P.2d 1316, 1318 (Colo. App. 1993), *aff'd*, 898 P.2d 559 (Colo. 1995).

12

¶ 24    The jury convicted Hagos of first degree kidnapping as a class 1 felony, which, as discussed, required the jury to find beyond a reasonable doubt that the victim suffered bodily injury.  *See* § 18-3-301(2); *see also People v. Hines*, 572 P.2d 467, 470 (Colo. 1977) ("To support a finding of bodily injury the prosecution must prove that at least some physical pain, illness or physical or mental impairment, however slight, was caused by the kidnapper.").  The jury also convicted Hagos of felony menacing, a lesser included offense of second degree assault.  While a person commits second degree assault by causing bodily injury to another person by means of a deadly weapon and with intent to cause such injury, § 18-3-203(1)(b), C.R.S. 2024, a person commits felony menacing "if, by any threat or physical action, he or she knowingly places or attempts to place another person in fear of imminent serious bodily injury," § 18-3-206, C.R.S. 2024.  The trial court instructed the jury to determine Hagos's guilt as to second degree assault (the charged offense) before considering his guilt as to felony menacing (the lesser included offense).

13

¶ 25     Hagos's argument goes as follows.  The key difference between second degree assault and felony menacing is causation of bodily injury; by finding Hagos guilty of felony menacing but not guilty of second degree assault, the jury determined that he hadn't caused bodily injury to the victim.  This determination creates ambiguity in the first degree kidnapping verdict because, by finding Hagos guilty of first degree kidnapping, the jury determined that he had caused bodily injury to the victim.

¶ 26     This argument fails for several reasons.  First, no element of first degree kidnapping negates a necessary element of felony menacing, so the verdicts are legally and logically consistent.  *See Delgado*, ¶ 20.  Conceivably, one may commit both offenses by knowingly placing a person in fear of serious bodily injury, *see* § 18-3-206, while forcibly seizing and carrying the person from one place to another, *see* § 18-3-301(1)(a), and, in doing so, cause bodily injury to the person, *see* § 18-3-301(2).  And contrary to Hagos's argument, the elements of first degree kidnapping and felony menacing don't conflict merely because one offense requires causation of bodily injury and the other doesn't.  *See Margerum v.*

*People*, 2019 CO 100, ¶ 29 ("[T]he crimes of assault and menacing have different elements and address different forms of harm that, significantly, are not inconsistent. A person could commit both crimes, and implicate both harms, in the same physical action without an inconsistent finding by the fact finder. In other words, a consistent factual basis can establish that someone *caused* bodily injury to another while also knowingly placing the person in *fear* of serious bodily injury."); *cf. Delgado*, ¶¶ 27-28 (The defendant's robbery and theft convictions were inconsistent because the jury found that he committed robbery by "tak[ing] anything of value from the person or presence of another *by the use of force*, threats, or intimidation" and that he committed theft "from the person of another *by means other than the use of force*, threat, or intimidation.") (citations omitted).

¶ 27 Second, we aren't convinced that, by acquitting Hagos of second degree assault before convicting him of felony menacing, the jury necessarily determined that Hagos didn't cause the victim bodily injury. Acquittals tell us very little about the jury's thought process. The jury could have found that Hagos caused the victim

15

bodily injury but that, instead of having intended to cause bodily injury, he had intended only to place the victim in fear of imminent serious bodily injury. Or the jury could have acquitted Hagos of second degree assault as a result of lenity, which only inures to his benefit. *See id.* at ¶ 25 (Inconsistent guilty and not guilty verdicts may be upheld "because the verdicts could have been the result of 'mistake, compromise, or lenity[.]' In other words, '[t]he most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt.'" (quoting *United States v. Powell*, 469 U.S. 57, 63, 65 (1984))).

¶ 28 Third, the jury may have convicted Hagos of first degree kidnapping and felony menacing based on different evidence. In closing argument, the prosecutor argued that Hagos menaced the victim with a gun in the bedroom of the victim's apartment. Hagos and his friends then carried the victim to another apartment. In the bathroom of this other apartment, Hagos beat the victim while demanding to know the money's location. Therefore, the jury could have found Hagos guilty of felony menacing based on what occurred

at the victim's apartment and of first degree kidnapping based on what occurred later. *See People v. Corpening*, 837 P.2d 249, 251-52 (Colo. App. 1992) (the defendant's contributing to the delinquency of a minor and second degree forgery verdicts weren't inconsistent because different evidence supported them); *see also People v. Scearce*, 87 P.3d 228, 232 (Colo. App. 2003) ("If the verdicts are consistent in any view of the evidence, the presumption is that the jury took that view.").

¶ 29     In sum, we aren't convinced that Hagos's first degree kidnapping and felony menacing verdicts are inconsistent, warranting reversal. Therefore, Hagos can't show that postconviction appellate counsel's failure to raise this argument amounted to ineffective assistance under *Strickland.*

¶ 30     Hagos also argues that the first degree kidnapping and conspiracy to commit second degree kidnapping verdicts are inconsistent. Because he didn't make this argument in his first Crim. P. 35(c) motion, postconviction appellate counsel can't have been ineffective by not raising it in the appeal of the postconviction court's denial of that motion. *See People v. Stovall*, 2012 COA 7M,

¶ 3 (ineffective assistance claims not raised in a Crim. P. 35(c) motion aren't properly preserved and can't be raised for the first time on appeal).

## IV. Proportionality Review

¶ 31    Hagos next contends that the postconviction court erred by summarily denying his Crim. P. 35(c) motion for an abbreviated and extended proportionality review of his sentence.  Again, we disagree.

¶ 32    As discussed, Crim. P. 35(c)(3)(VII) bars any claim that could have been presented in a previous appeal or postconviction proceeding.  Because Hagos could have challenged his sentence on direct appeal or in a previous postconviction motion, Crim. P. 35(c)(3)(VII) bars this claim.

¶ 33    We reject Hagos's argument that his proportionality review claim warrants review under Crim. P. 35(c)(3)(VII)(c), which carves out an exception to Crim. P. 35(c)'s procedural bar for "[a]ny claim based on a new rule of constitutional law that was previously unavailable, if that rule should be applied retroactively to cases on collateral review."  In his request for a proportionality review, Hagos asserted that his life without parole sentence is grossly

18

disproportionate to his first degree kidnapping conviction under *Wells-Yates v. People*, 2019 CO 90M, which the Colorado Supreme Court announced after the trial court sentenced Hagos. He also cited *People v. Clark*, (Colo. App. No. 18CA2293, Aug. 26, 2021) (not published pursuant to C.A.R. 35(e)), in which a division of this court conducted an abbreviated proportionality review under *Wells-Yates* and concluded that the defendant's life without parole sentence for first degree kidnapping raised an inference of gross disproportionality because, among other reasons, the victim lived. *Id.*, slip op. at ¶¶ 37-40. But a division of this court has held in a published opinion that *Wells-Yates* doesn't apply retroactively. *People v. McDonald*, 2023 COA 23, ¶ 24 (*cert. granted* Nov. 14, 2023); *see id.* ("[T]o the extent [*Wells-Yates*] announced new rules as suggested by McDonald, those rules are procedural, not substantive. As a result, the exceptions to Crim. P. 35(c)'s procedural bars don't apply to McDonald's 2020 claims regarding

the proportionality of his sentence, and they were properly

denied.").[3]

¶ 34    We agree with *McDonald*'s holding and therefore follow it.

Because Hagos's motion for a proportionality review is procedurally

barred, the postconviction court didn't err by summarily denying it.

## V.    Legality of Hagos's Sentence

¶ 35    Lastly, Hagos contends that the postconviction court erred by

summarily denying his Crim. P. 35(a) motion to correct an illegal

sentence.  We perceive no error.

¶ 36    In his motion, Hagos asserted that Colorado law doesn't

authorize his life without parole sentence because the erroneous

jury instruction for first degree kidnapping invalidates his

conviction for that offense.  But Hagos's claim isn't cognizable

under Crim. P. 35(a), which asks only whether a defendant's

sentence is consistent with the General Assembly's sentencing

scheme.  *See People v. Rockwell*, 125 P.3d 410, 414 (Colo. 2005);

---

[3] This issue — whether *Wells-Yates v. People*, 2019 CO 90M, announced a new, substantive rule of constitutional law that applies retroactively — is currently pending before the Colorado Supreme Court in *McDonald v. People*, No. 23SC381, 2023 WL 8009016 (Colo. Nov. 14, 2023) (unpublished order).

*Hard*, ¶ 46. (Indeed, Hagos concedes that Colorado's sentencing statute, § 18-1.3-401, C.R.S. 2024, authorizes a life without parole sentence upon conviction of a class 1 felony.)

¶ 37 His claim challenges the constitutionality of his conviction, which instead falls under Crim. P. 35(c)(2)(I). *See People v. Dunlap*, 222 P.3d 364, 369 (Colo. App. 2009) ("[T]here is a significant difference between a true illegal sentence claim under Crim. P. 35(a) that the sentence is inconsistent with the statutory scheme, and the assertion of a claim that a sentence was imposed in violation of the constitution, which can involve a claim that the conviction itself is defective.") (citations omitted); *see also Rockwell*, 125 P.3d at 422 (Coats, J., concurring in the judgment) ("[T]he defendant's challenge to the factual basis for his offense only secondarily implicates the legality of his sentence. . . . Were Crim. P. 35(a) to extend so far, virtually any challenge to a defendant's conviction could be couched in terms of its secondary effect on his sentence, obliterating any distinction between Crim. P. 35(a) and Crim. P. 35(c), and the separate purposes and limitations of each."); *People v. Collier*, 151 P.3d 668, 670 (Colo. App. 2006) (the substance of a postconviction

21

motion determines whether it falls under Crim. P. 35(a) or Crim. P. 35(c)).

¶ 38 Because the division affirmed Hagos's first degree kidnapping conviction in *Hagos I*, the postconviction court properly rejected Hagos's attempt to relitigate his conviction. *See* Crim. P. 35(c)(3)(VI) (the court must deny any claim that was raised and resolved in a prior appeal); *Dunlap*, 222 P.3d at 369 ("Because defendant would seek to attack his conviction, not just his sentence, we decline to allow a new appeal, which would effectively open his entire case to relitigation, contrary to finality principles.").

## VI.   Disposition

¶ 39 The postconviction court's orders are affirmed.

JUDGE LIPINSKY and JUDGE SULLIVAN concur.